I respectfully dissent from those aspects of today's decision reversing the bank defendants' summary judgment on Machen's claim on the tort of outrage and on all of her claims on the theory of vicarious orrespondeat superior liability. I further respectfully dissent from the reversal insofar as it puts the bank defendants to trial on the theories of negligent or wanton failure to train, to supervise, or to discipline the defendant Robert, ostensibly to prevent him from assaulting and battering Machen, invading her privacy, or committing outrage against her.
The tort of outrage is defined and explained in Busby v. TruswalSystems Corp., 551 So.2d 322, 324 (Ala. 1989):
 "The tort of outrageous conduct was first recognized by this Court in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. [1980]), in which the Court held that `one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.' Id. at 365. In order for a plaintiff to recover, the conduct of the defendant must be `so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' Id."
The Busby Court explains that "[t]he tort of outrage provides a remedy for `extreme and outrageous conduct' [citation omitted], and so should not be the basis for vicarious or respondeat superior liability except in the most compelling circumstances." 551 So.2d at 327. I respectfully submit that the evidence against the bank defendants does not meet this test, no matter what may be the outcome of the pending claims against Robert.
The majority correctly observes that "[t]he evidence did not demonstrate that Robert's alleged acts of misconduct were committed in the line and scope of his employment with the bank or that they were committed in furtherance of the bank's business." 551 So.2d at 327. Thus, Machen's claims on the theory of respondeat superior require substantial evidence that the bank defendants ratified some underlying tort committed by Robert. The law of ratification is succinctly stated in AlabamaPattern Jury Instruction: Civil (2d ed. 1993), Instruction 3.12:
 "RATIFICATION OF ACTS BY PRINCIPAL "A principal can be held responsible for an act of his agent, which was committed beyond the scope of the agent's authority by subsequently ratifying such act. Ratification by the principal of an act of his agent requires an intent on the part of the principal to ratify such act. This intention may be express or implied, and may be inferred where there is evidence intending [sic] to show that the principal, with adequate knowledge of the facts and circumstances, so conducted himself as to indicate his purpose *Page 989 to confirm or adopt the unauthorized act of his agent." (Emphasis added.)
The record contains no evidence that the bank defendants harbored a "purpose to confirm or adopt" (emphasis added) any tort committed by Robert.
The majority cites Potts v. BE K Constr. Co., 604 So.2d 398 (Ala. 1992), for the holding that substantial evidence of a recurrence of either invasion of privacy, assault and battery, or outrage, or a combination of two or more of these torts (the majority does not specify) committed by one employee against another after the other has reported to the employer the commission of one or more of these torts, not necessarily the same one or combination (again, the majority does not specify), by the allegedly offending employee, creates a jury question of whether the employer's measures to prevent a recurrence were adequate.Potts does, indeed, seem to hold that substantial evidence of such a recurrence creates such a jury question for the purpose of determining whether the employer ratified the allegedly offending employee's conduct and thereby incurred vicarious liability to the allegedly offended employee on the theory of respondeat superior. Potts expressly limits its holding to the issue of ratification for the purpose of establishingvicarious liability. The holding of Potts in this regard contradicts Pattern Jury Instruction 3.12, already quoted, which seems to be the better statement of the law. This Potts holding should be abandoned and certainly should not be extended to the direct liability theory that the employer tortiously failed to train, to supervise, or to discipline the allegedly offending employee. This Court should not hold, as it apparently does, that substantial evidence of a recurrence is enough to create a jury question on whether the employer tortiously failed to train, to supervise, or to discipline the allegedly offending employee.
In this case, Machen complained only once to the bank. The bank counseled or reprimanded Robert. The "conduct" stopped for a while. After a single alleged recurrence, Machen quit and sued.
The rule that substantial evidence of a recurrence is enough to create a jury question on either vicarious liability or direct liability imposes an insuperable burden on employers. The only way an employer can withcertainty prevent a recurrence is to discharge the accused employee after the first report. Separating the two employees physically will not prevent a recurrence by telephone or other remote communication. But discharging an employee on the basis of a report, which may be false or exaggerated, would be, in most cases, grossly unfair and impractical and, indeed, legally hazardous itself.
The majority, in footnote 1, correctly observes:
 "It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage. See, e.g., Ex parte Atmore Community Hosp., 719 So.2d 1190 (Ala. 1998); Mardis v. Robbins Tire Rubber Co., 669 So.2d 885 (Ala. 1995); Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala. 1993); Potts v. BE K Constr. Co., 604 So.2d 398 (Ala. 1992)."
761 So.2d at 983-84 n. 1. Yet Potts, supra, states:
 "[W]e expressly decline to hold that what constitutes sufficient evidence of ratification by an employer in a case of sexual harassment would be sufficient evidence of ratification in cases involving other intentional torts."
Id. at 402. By creating a unique law for ratification in sexual harassment cases, the Potts court does begin to create an independent cause of action for sexual harassment. By promoting the single-recurrence rule from Potts, today's decision furthers the creation of this new tort. *Page 990 
The conduct commonly branded as sexual harassment rarely requires any isolation or leaves any tangible evidence. Thus a person may charge it falsely with little or no danger of being positively proven wrong. Commentators have aptly observed that the crime of rape, which does
require isolation and frequently does leave tangible evidence, is easy to charge and hard to defend. Sexual harassment is far worse in this regard.
Today's decision promoting the single-recurrence rule of Potts impales an employer on the horns of a dilemma when the employer is confronted with a report of sexual harassment. Either the employer must discharge the accused employee, even though he or she may be entirely innocent, and must incur all the risks and losses of such a discharge; or the employer must risk an ensuing claim, even a false claim, of a single recurrence, which will actually go to the jury. True, if the jury finds the claim false, the employer will win a defense verdict. But, at the cost of tens of thousands of dollars for defense, and with no way to prove positively that the claim was brought in bad faith and that the plaintiff should be held accountable, the defense victory will be nothing but an exorbitant loss.